# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John F. Grady | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 8780 | **DATE** | September 21, 2004 |
| **CASE TITLE** | Advertising Specialty Inst. v. Hall-Erickson, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Hall-Erickson's motion to dismiss [17-1] is granted in part and denied in part. Count III is hereby dismissed with prejudice. ASI's motion to convert Hall-Erickson's motion to dismiss into one for summary judgment [24-1] is denied. Discovery on Counts I and II shall proceed forthwith. A status hearing is set for December 1, 2004 at 10:30, at which time the court will set a discovery cut-off. ENTER MEMORANDUM OPINION.

(11) x [For further detail see order (on reverse side of/attached to) the original minute order.]

| | No notices required, advised in open court. | | | number of notices | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required. | | | | | |
| X | Notices MAILED by judge's staff. | | | | | |
| | Notified counsel by telephone. | | | date docketed | | 28 |
| | Docketing to mail notices. | | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to _____ | | | | | |
| KAM | courtroom deputy's initials | | | date mailed notice | | |
| | | | | KAM | | |
| | | | | mailing deputy initials | | |

U.S. DISTRICT COURT

2004 SEP 21 PM 5: 23

Date/time received in central Clerk's Office

(Reserved for use by the Court)

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DOCKETED

SEP 22 2004

| | | |
|---|---|---|
| ADVERTISING SPECIALTY INSTITUTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 C 8780 |
| | ) | |
| HALL-ERICKSON, INC., d/b/a THE | ) | |
| MOTIVATION SHOW, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

Before the court is defendant's motion to dismiss for failure to state a claim. For the reasons that follow, the motion is granted in part and denied in part.

### BACKGROUND

The following facts are drawn from the complaint and taken as true for purposes of this motion. Advertising Specialty Institute ("ASI"), the plaintiff, is a Pennsylvania corporation that is involved in the promotional products industry. ASI, in its own words, "acts as a meeting place where suppliers of promotional products can interact with distributors of promotional products." (Compl., ¶ 4.) Promotional products are articles of merchandise that are marked with a company's name or logo and used in corporate marketing and communications programs. Defendant Hall-Erickson is in the business of producing and managing trade shows. One of its shows, the "Motivation Show," is held annually in Chicago, Illinois

and is dubbed by Hall-Erickson as "The World's Largest Collection of Incentive Merchandise, Travel and Meeting Destinations, Recognition Awards, Promotional Products and Business Gifts." (Compl., ¶ 6.)

On February 6, 2001, ASI and Hall-Erickson entered into a written contract ("the Agreement") concerning ASI's participation in the Motivation Show over a three-year period from November 1, 2000 through October 31, 2003. According to the complaint, both parties stood to benefit from the arrangement:

> ASI would be better able to serve its distributor members by exposing them to Motivation Show exhibitors, and its supplier members by exposing them to Motivation Show attendees, who then would purchase their incentives through ASI-listed distributors. ASI's participation in the Motivation Show also would assist in creating a positive reputation for ASI in the incentive market. The Motivation Show would gain additional exhibitors and booths representing distributors and suppliers that were dedicated to using the ASI network and provide the Motivation Show with exposure to the ASI network. This would help the Motivation Show distinguish itself as one of the few sanctioned end-buyer shows dedicated to involving the ASI distributors as exhibitors or as representatives of the ASI network suppliers.

(Compl., ¶ 9.)

In exchange for ASI's endorsement of and participation in the Motivation Show, Hall-Erickson agreed, among other things, that the Agreement would "not be extended to any other promotional

products association, trade show, or conference (i.e.: PPAI)."
(<u>Compl.</u>, ¶ 13; <u>Agreement</u>, p. 2, ¶ 8, attached to <u>Compl.</u> as <u>Ex.</u> A.)
Hall-Erickson also agreed to grant ASI the "right of first refusal
concerning any activity, alliance, or opportunity concerning the
promotional product/advertising specialty industry." (<u>Compl.</u>, ¶ 13;
<u>Agreement</u>, p. 2, ¶ 9.)   Finally, the Agreement provided the
following cancellation provision:

> This Agreement may be cancelled by either
> party, upon written notice to the other
> party, within the first 60 days of each
> program year (program year, for the
> purposes of this Agreement, will be
> defined as November 1 to October 31).
> [Hall-Erickson] agrees that it shall not
> enter into similar agreements with any
> other entity, for example, national
> trade associations such as the Promotional
> Products Association International,
> regional trade associations, trade shows
> or conferences that are involved in the
> promotional products/advertising specialty
> industry during the term of this Agreement
> and for a period of twelve (12) months
> following any termination.

(<u>Compl.</u>, ¶ 14; <u>Agreement</u>, p. 3.)

    In the summer of 2002, ASI learned that Hall-Erickson was
coordinating with Promotional Products Association International
("PPAI"), an ASI competitor, to "co-locate" PPAI's annual trade
show with the Motivation Show at the same exhibition venue in
Chicago, and at the same time, September 16 through September 18,

2003.[1]  Given that PPAI was a competitor, ASI repeatedly requested
Hall-Erickson to inform the Chicago Convention and Tourism Board
("CCTB") that the PPAI show and the Motivation Show were
competitive events.[2]   Notwithstanding these requests, Hall-
Erickson, on September 25, 2002, sent a letter to the CCTB advising
it that the PPAI show and the Motivation Show were _not_ competitive
events.

Then, on or around December 19, 2002, following several
communications with ASI regarding ASI's dissatisfaction with Hall-
Erickson's plans to "co-locate" with PPAI, Hall-Erickson sent a
letter to ASI in which it stated it was cancelling the Agreement.
In the same letter, Hall-Erickson proposed a new contract between
the two parties that was materially indistinguishable from the
Agreement, except it changed the term of the agreement from 2000
though 2003 to 2002 through 2005, and it omitted the clauses
granting ASI a "right of first refusal" and forbidding Hall-
Erickson from entering into "similar agreements" within twelve
months of the agreement's termination.   Despite its purported
termination of the Agreement, Hall-Erickson continued to solicit
ASI's participation in the 2003 Motivation Show.   ASI responded

---

[1]"Co-locate" is a term of art within the trade show industry
and denotes an agreement by two or more entities to run trade
shows concurrently in the same or adjacent facilities.  (See
Compl., ¶ 16.)

[2]Presumably, the CCTB has the authority to prevent
competitors from "co-locating" their trade shows.

that it would participate in the show and that it intended to comply with its obligations under the Agreement.[3]

ASI has brought a three-count complaint, the gravamen of which is that Hall-Erickson breached various provisions of the Agreement by entering into a business relationship with PPAI.[4] Count I seeks a declaratory judgment that Hall-Erickson breached the Agreement when it failed to notify the CCTB that the PPAI show and the Motivation Show were competitive events. Count II, also a breach of contract claim, alleges that Hall-Erickson breached the Agreement by: (i) allowing PPAI to exhibit contemporaneously with the Motivation Show; (ii) failing to grant ASI the right of first refusal "concerning any activity, alliance or opportunity concerning the promotional product/advertising specialty industry"; (iii) failing to grant ASI the ability to approve exhibitors "to ensure that no exhibitor competes with ASI"; (iv) failing to preclude PPAI from co-locating its show with the Motivation Show; (v) failing to advise the CCTB that the PPAI show and the Motivation Show were competitors; and (vi) advising the CCTB that

---

[3]We infer from the complaint and the motion papers that the PPAI show and the Motivation Show did in fact run concurrently, with ASI's participation in the latter, from September 16 through September 18, 2003.

[4]ASI originally filed its complaint in Pennsylvania state court. Hall-Erickson removed the case to a federal district court in Pennsylvania which then, on Hall-Erickson's motion, transferred the case to this court pursuant to 28 U.S.C. § 1404(a).

the PPAI show and the Motivation Show were not competitive events.
Count III, titled "equitable estoppel," alleges that Hall-Erickson
represented to ASI that it would not cancel the Agreement prior to
the September 2003 show, and therefore it was estopped from doing
so. Hall-Erickson has moved to dismiss for failure to state a
claim.

## DISCUSSION

The purpose of a 12(b)(6) motion to dismiss is to test the
sufficiency of the complaint, not to resolve the case on the
merits. See 5B Charles Alan Wright & Arthur R. Miller, Federal
Practice and Procedure § 1356, at 354 (3d ed. 2004). When
evaluating such a motion, the court must accept as true all factual
allegations in the complaint and draw all reasonable inferences in
the plaintiff's favor. See Hentosh v. Herman M. Finch Univ. of
Health Sciences, 167 F.3d 1170, 1173 (7th Cir. 1999); Jang v. A.M.
Miller & Assocs., 122 F.3d 480, 483 (7th Cir. 1997). Dismissal is
appropriate only if "'it is clear that no relief could be granted
under any set of facts that could be proved consistent with the
allegations.'" Ledford v. Sullivan, 105 F.3d 354, 356 (7th Cir.
1997) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984));
Jones v. General Elec. Co., 87 F.3d 209, 211 (7th Cir.), cert.
denied, 519 U.S. 1008 (1996).[5]

---

[5]We may also consider materials attached to the complaint –
here, the Agreement – without converting Hall-Erickson's motion
to dismiss into one for summary judgment. See Doe v. First Nat'l
Bank of Chicago, 865 F.2d 864, 873 (7th Cir. 1989).

Our first task, as in all diversity cases, is to determine which state's substantive applies to the dispute. Both parties submit that Pennsylvania law governs pursuant to a choice-of-law provision in the Agreement. (See Agreement, p. 4 ("This Agreement shall be governed and interpreted in accordance with the laws of the Commonwealth of Pennsylvania without regard to principles of conflict of laws.").) We agree. See Kohler v. Leslie Hindman, Inc., 80 F.3d 1181, 1184-85 (7th Cir. 1996) (In a dispute arising from a contract, a choice-of-law provision controls as long as the contract is valid).

### Counts I and II - Breach of Contract

In Counts I and II, ASI alleges that Hall-Erickson breached various provisions of the Agreement by entering into a business relationship with PPAI. The elements of a breach of contract claim under Pennsylvania law are: (i) the existence of a contract, including its essential terms, (ii) a breach of a duty imposed by the contract, and (iii) resultant damages. See J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc., 792 A.2d 1269, 1272 (Pa. Super. 2002).

Hall-Erickson presents several arguments as to why Counts I and II fail to state a claim. First, it contends that its December 2002 cancellation of the Agreement extinguished all of its contractual duties owed to ASI. Assuming for present purposes the validity of the cancellation, it is true that it would have

relieved Hall-Erickson of *some* of its obligations under the Agreement. For example, it would not have been bound by the Agreement's provisions related to show logistics (<u>see, e.g.</u>, <u>Agreement</u>, p. 1-2, "[Hall-Erickson] will provide . . . 600 sq. ft. complimentary booth space . . . .") because those duties would not have accrued until shortly before the show. Other duties, however, were enforceable, and therefore could be breached, from the date of the Agreement's inception, November 1, 2000. These include, for example, the duties to provide "ASI with the right of first refusal concerning any activity, alliance, or opportunity concerning the promotional product/advertising specialty industry," and to not extend the Agreement "to any other promotional products association, trade show, or conference (i.e.: PPAI)." (<u>See</u> <u>Agreement</u>, p. 2, ¶¶ 8,9). And it is these on-going obligations that ASI alleges were breached in Summer 2002, months before the alleged cancellation, when Hall-Erickson engaged PPAI regarding the "co-locating" of the Motivation Show and the PPAI show. Therefore, Hall-Erickson's cancellation does not foreclose ASI's claim for breach of contract.

Next, Hall-Erickson argues that ASI fails to state a claim because the Motivation Show and the PPAI show were *not* competitive events. In support, Hall-Erickson submits an August 21, 2002 letter it sent to the CCTB saying just that. Hall-Erickson misapprehends the court's role in deciding a motion to dismiss. ASI alleges that the Motivation Show and the PPAI show are

competitive events, and at least at this juncture, we take that assertion at face value. Hall-Erickson will have ample opportunity to present evidence to contradict ASI's allegations; its job on a motion to dismiss is to demonstrate that even if those allegations *are* true, they do not make out a claim for relief. See <u>Hishon</u>, 467 U.S. at 73.[6]

Hall-Erickson's remaining arguments do not warrant discussion. Suffice it to say, Hall-Erickson has not shown that ASI will not be able to prove any set of facts consistent with the complaint's allegations that would constitute a breach of the Agreement. If ASI and PPAI are competitors, and Hall-Erickson and PPAI entered into a business relationship prior to the September 2003 Motivation Show, all of which ASI alleges, it is certainly *possible* that such relationship violated one or more of the Agreement's provisions. ASI has stated a claim for breach of the Agreement.

### Count III - Equitable Estoppel

Count III is labeled as an "equitable estoppel" claim and seeks a judgment that Hall-Erickson was estopped from cancelling

---

[6]In response to Hall-Erickson's submission of the August 21, 2002 CCTB letter, ASI has filed a motion to convert Hall-Erickson's motion to dismiss into a motion for summary judgment. Because we find the letter to be beyond the scope of the pleadings, we have not considered it and ASI's motion is denied. See Fed.R.Civ.P. 12(b) (Requiring a court to convert a motion to dismiss to a motion for summary judgment only when "matters outside the pleadings are presented to *and not excluded by the court*.") (emphasis added.)

the Agreement. Equitable estoppel is defined by the Pennsylvania Supreme Court as a doctrine sounding in equity "that prevents one from doing an act differently than the manner in which another was induced by word or deed to expect." Novelty Knitting Mills, Inc. v. Siskind, 457 A.2d 502, 503 (Pa. 1983). However, under Pennsylvania law, equitable estoppel is not recognized as a separate cause of action. See, e.g., Carlson v. Arnot-Ogden Mem. Hosp., 918 F.2d 411, 416 (3d Cir. 1990) (noting that under Pennsylvania law, "[e]quitable estoppel is not a separate cause of action."); Graham v. Pennsylvania State Police, 634 A.2d 849, 850 (Pa. Commw. Ct. 1993) ("[E]quitable estoppel . . . has only been recognized as a defense and not as a cause of action in itself."); Weiland v. DeFrancisis, 28 Pa. D &C 4th 129, 133 (Pa. Com. Pl. 1996) ("[E]quitable estoppel is not an independent cause of action. . . ."). That is not to say that ASI may not pursue an equitable estoppel argument, but only that it must be raised, if at all, "either as an affirmative defense" or here, "as grounds to prevent the defendant from raising a particular defense." See Carlson, 918 F.2d at 416. Count III is therefore dismissed for failure to state a claim.

## CONCLUSION

For the foregoing reasons, Hall-Erickson's motion to dismiss is granted in part and denied in part. Count III is hereby dismissed with prejudice. Discovery on Counts I and II shall proceed forthwith. A status hearing is set for December 1, 2004 at

10:30, at which time the court will set a discovery cut-off.

DATE:    September 21, 2004

ENTER:

John F. Grady, United States District Judge