**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| ADVERTISING SPECIALTY INSTITUTE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03 C 8780 |
| | ) | |
| HALL-ERICKSON, INC. d/b/a The Motivation Show, and NATIONAL PREMIUM SHOW, INC., d/b/a The Motivation Show, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Before the court are two motions: (1) the motion of defendant National Premium Show, Inc. for summary judgment; and (2) defendants' motion to strike certain exhibits attached to plaintiff's supplemental memorandum of law in opposition to defendants' motions for summary judgment. For the reasons explained below, the motion for summary judgment is granted in part and denied in part, and the motion to strike is denied.

**BACKGROUND**

This is a breach of contract action brought by Advertising Specialty Institute ("ASI") against Hall-Erickson, Inc. ("Hall-Erickson") and National Premium Show, Inc. ("NPS"). Plaintiff ASI is a corporation that is involved in the promotional products

industry.[1]  In its own words, ASI "acts as  a meeting place where
suppliers of promotional products can interact with distributors of
promotional products." (Amended Complaint, ¶ 7.)  Defendants Hall-
Erickson and NPS are in the business of producing and managing
trade shows; one of their shows, the "Motivation Show," is held
annually in Chicago and is self-described as "The World's Largest
Collection of Incentive Merchandise, Travel & Meeting Destinations,
Recognition Awards, Promotional Products and Business Gifts." (<u>Id.</u>
¶¶ 8-9, 11.)

ASI sues on a written contract (the "Agreement") that it
entered into with, ostensibly, The Motivation Show on February 6,
2001, concerning ASI's participation in the show over a three-year
period from November 1, 2000 through October 31, 2003.  The thrust
of the Agreement was that The Motivation Show would provide ASI
with exhibit space for a pavilion at the show, and ASI would
participate in the show and encourage its member suppliers and
distributors to participate in the show as well.  In exchange for
ASI's endorsement of and participation in the show, ASI received
"[a]ssurance that this agreement [would] not be extended to any
other promotional products association, trade show, or conference
(i.e.: PPAI)." (Amended Complaint, Ex. A, Agreement, at 2, ¶ 8.)
(PPAI--Promotional Products Association International--is a

---

[1]  Promotional products are articles of merchandise that are marked with
a company's name or logo and used in corporate marketing and communications
programs.  (Amended Complaint, ¶ 7.)

competitor of ASI.)  In addition, the Agreement granted ASI the "right of first refusal concerning any activity, alliance, or opportunity concerning the promotional product/advertising specialty industry." (<u>Id.</u> at 2, ¶ 9.)  The Agreement also contained the following cancellation provision:

> This Agreement may be cancelled by either party, upon written notice to the other party, within the first 60 days of each program year (program year, for the purposes of this Agreement, will be defined as November 1 to October 31.)
> The Motivation Show agrees that it shall not enter into similar agreements with any other entity, for example, national trade associations such as, the Promotional Products Association International, regional trade associations, trade shows or conferences, that are involved in the promotional products/advertising specialty industry during the term of this Agreement and for a period of twelve (12) months following any termination.

(<u>Id.</u> at 3.)

In the summer of 2002, ASI learned that defendants were coordinating with PPAI to "co-locate" PPAI's annual trade show with The Motivation Show at the same exhibition venue in Chicago, McCormick Place, and at the same time, September 16 through September 18, 2003.[2]  Given that PPAI is its competitor, ASI objected and repeatedly asked defendants to inform the Chicago Convention and Tourism Bureau (the "CCTB") that The Motivation Show and the PPAI event were competitive.  Defendants, however, sent a

---

[2]  "Co-locate" is a term of art within the trade-show industry denoting an agreement by two or more entities to conduct trade shows concurrently in the same or adjacent facilities.  (Amended Complaint, ¶ 20.)

letter to the CCTB advising that the shows were not competitive events.

Then, on December 19, 2002, following several communications with ASI regarding ASI's dissatisfaction with the "co-location" plans, Hall-Erickson sent a letter to ASI in which it stated that it was canceling the Agreement, effective immediately.  In the same letter, Hall-Erickson proposed a new contract between the parties that was materially indistinguishable from the Agreement, except that it changed the term from 2000-2003 to 2002-2005, and it omitted the clauses giving ASI a right of first refusal and prohibiting defendants from entering into similar agreements within twelve months of termination of the agreement.  Despite the termination of the Agreement, defendants continued to solicit ASI's participation in the 2003 Motivation Show.  The Motivation Show and the PPAI show did run on overlapping dates at the same venue in Chicago in September 2003.

ASI initially filed a three-count complaint against Hall-Erickson, which moved for dismissal.[3]  We determined that pursuant to the choice-of-law provision in the Agreement, Pennsylvania law governs this dispute.  We dismissed plaintiff's "equitable

_____

[3]  ASI originally filed its complaint in Pennsylvania state court.  Hall-Erickson removed the case to a federal district court in Pennsylvania, which, on Hall-Erickson's motion, transferred the case to this court pursuant to 28 U.S.C. § 1404(a).

estoppel" claim with prejudice, but denied the motion as to plaintiff's breach of contract claims.

Plaintiff later sought, and was granted, leave to file an amended complaint. The amended complaint, which added NPS as a defendant, contains two claims for breach of contract. Count I is labeled "declaratory judgment," but simply seeks a declaratory judgment that defendants breached the Agreement. In Count II, ASI alleges that defendants breached the Agreement by (1) allowing PPAI to co-locate with The Motivation Show and thereby extending the Agreement to PPAI; (2) failing to grant ASI the right of first refusal "concerning any activity, alliance, or opportunity concerning the promotional product/advertising specialty industry"; (3) failing to grant ASI the ability to approve exhibitors in the ASI pavilion to ensure that no exhibitor competed with ASI; (4) failing to preclude PPAI from scheduling its show contemporaneously with The Motivation Show in September 2003; (5) failing to advise the CCTB that the shows were competitive; and (6) forwarding a letter to the CCTB advising that the shows were not competitive.

Defendants then filed motions for summary judgment, and on November 17, 2005, we held oral argument on those motions. In a minute order of the same date, we stated:

> Oral argument held on each of the two defendants' motions
> for summary judgment. The motion of the defendant Hall-
> Erickson, Inc. for summary judgment is denied. The court
> believes that there is a genuine issue of fact as to
> whether this defendant was a party to the contract.

As to the defendant National Premium Show, Inc., the court finds that there are genuine factual issues as to whether the defendant caused the Chicago Convention and Tourism Bureau to permit PPAI to conduct its 1993 show at McCormick Place at the same time defendant conducted its show, and as to whether the two shows were competitive. On that basis, the court would deny defendant's motion for summary judgment but for the additional issue of whether such conduct by defendant, if proved, would violate the contract between the parties. The question here is whether the 12-month restriction following termination applies to paragraph 9 of the contract. The parties will brief this issue . . . .

(Minute Order of November 17, 2005.)

The parties have now filed supplemental briefs. Defendants have also filed a motion to strike certain exhibits attached to plaintiff's supplemental memorandum of law.

## DISCUSSION

### A.   NPS's Motion for Summary Judgment

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering such a motion, the court construes the evidence and all inferences that reasonably can be drawn therefrom in the light most favorable to the nonmoving party. See Pitasi v. Gartner Group, Inc., 184 F.3d 709, 714 (7th Cir. 1999). "Summary judgment should be denied if the dispute is 'genuine': 'if the evidence is such that a reasonable jury could return a verdict for

the nonmoving party.'" <u>Talanda v. KFC Nat'l Mgmt. Co.</u>, 140 F.3d 1090, 1095 (7th Cir. 1998) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986)).  The court will enter summary judgment against a party who does not "come forward with evidence that would reasonably permit the finder of fact to find in [its] favor on a material question." <u>McGrath v. Gillis</u>, 44 F.3d 567, 569 (7th Cir. 1995).

We previously held that there is a genuine issue of fact as to whether Hall-Erickson was a party to the Agreement and that there are genuine factual issues as to whether defendants caused the CCTB to permit PPAI to conduct its 2003 show at McCormick Place at the same time defendants conducted the Motivation Show, and as to whether the two shows were competitive.

After reviewing the parties' supplemental briefs and statements of material fact, we can draw additional conclusions as a matter of law.  There is no genuine issue that under the plain language of the Agreement, defendants[4] were permitted to cancel the Agreement without cause, upon written notice to the other party, within the first sixty days of each program year.  Hall-Erickson did so in December 2002, and the Agreement was therefore canceled. The Agreement prohibited defendants from "enter[ing] into similar agreements with any other entity . . . for a period of twelve (12)

---

[4] We will use the term "defendants" for convenience here, although there is a genuine issue as to whether Hall-Erickson was a party to the Agreement.

months following any termination." The issue requiring supplemental briefing was whether paragraph 9 of the Agreement, which gave ASI the "right of first refusal concerning any activity, alliance, or opportunity concerning the promotional product/advertising specialty industry," was in effect during the twelve-month period. By the plain language of the Agreement, the answer is no. Plaintiff has failed to persuade us otherwise. The only possible reasonable reading of the Agreement is that the sole obligation defendants had to ASI after termination was to refrain from entering into "similar agreements with any other entity" during the twelve-month period.

Furthermore, there is no evidence from which a jury could reasonably find that defendants entered into a "similar agreement" with PPAI (or any other entity) either prior to termination of the Agreement or during the twelve-month period after termination. Plaintiff contended at oral argument that the co-location of The Motivation Show with the PPAI show violated "the spirit of the agreement." (Tr. of November 17, 2005 Hearing at 33). We noted that the "spirit" of the Agreement (or what plaintiff asserts is its "spirit") does not govern, but rather its literal language. (Id. at 34.) The Agreement prohibited defendants from extending "this agreement" to any other association such as PPAI, and from entering into "similar agreements" with any other entity during the twelve months after termination. There is no evidence that

defendants extended the Agreement to any other association during the time the Agreement was in effect.    Moreover, plaintiff has failed to come forth with any evidence that defendants entered into a "similar agreement" during the time the Agreement was in effect or during the twelve-month period.    An agreement "similar" to the Agreement between the parties would necessarily involve The Motivation Show allowing a competitor of plaintiff to have an exhibit in the show.    That is not what occurred with PPAI; it is doubtful that defendants entered into <u>any</u> agreement with PPAI, but there is no evidence that defendants entered into a "similar" agreement with PPAI.

Thus, the only issue that remains as to breach is whether defendants violated the Agreement during the time that it was in effect--prior to December 19, 2002--by failing to grant plaintiff the right of first refusal "concerning any activity, alliance, or opportunity concerning the promotional product/advertising specialty industry."[5]  Plaintiff has submitted sufficient evidence to create a genuine factual issue as to whether, in mid-2002 (prior to canceling the Agreement), defendants engaged in an activity,

_____

[5]/   Another pre-termination activity that is alleged in the complaint to have been a breach is the failure to grant ASI the ability to approve exhibitors in the ASI products pavilion.  The parties have given this alleged breach little, if any, attention.  As far as we can tell, there is no evidence that defendants failed to grant ASI this approval ability.  The evidence regarding PPAI is irrelevant to this allegation because PPAI did not have an exhibit at The Motivation Show, let alone in ASI's pavilion.

alliance or opportunity with PPAI and failed to give plaintiff the right of first refusal.

Defendants argue that plaintiff cannot recover lost profits for this breach because under Pennsylvania law, lost profits must have been reasonably foreseeable in order to be recoverable. Defendants contend--without citation to relevant authority--that due to the existence of the cancellation provision of the Agreement, it was unreasonable for plaintiff to assume that the Agreement would continue in 2003, and therefore unreasonable for it to expect any profits in regard to its relationship with defendants. Defendants' argument, taken to its logical extreme, is that simply because the Agreement includes a cancellation provision, plaintiff could never reasonably expect any damages to result from any breach of the Agreement. We are unpersuaded. Defendants also contend that with respect to restitution, any purported value that ASI claims it did not receive in return for the beneficial endorsements it gave defendants was caused by cancellation of the Agreement and not any alleged breach. That, however, is a factual issue for trial.

In conclusion, the motion of NPS for summary judgment will be granted in large part. The motion will be denied to the extent that we have found a genuine factual issue as to whether defendants breached the "right of first refusal" provision of the Agreement prior to termination.

**B.    Defendants' Motion to Strike**

Defendants have filed a motion to strike a number of exhibits that are attached to plaintiff's supplemental memorandum of law in opposition to defendants' motions for summary judgment.  Defendants object to the exhibits on grounds of lack of foundation and hearsay.

Motions to strike are generally disfavored except when they serve to expedite.  See Heller Fin., Inc. v. Midwhey Powder Co., 883 F.2d 1286, 1294 (7th Cir. 1989).  The instant motion does not serve to expedite; instead, it has generated an unnecessary additional set of briefs.  Instead of asserting a long list of objections to plaintiff's various exhibits, defendants should have incorporated their objections into their substantive summary judgment briefs and explained why the exhibits and objections are relevant to the issues raised in the summary judgment motions.  We found it unnecessary to rely on the challenged exhibits in deciding the summary judgment motions, so the motion to strike will be denied as moot.  When the time comes for trial, defendants may wish to bring a motion in limine, but at this juncture it is unnecessary to address defendants' objections to the exhibits.

**CONCLUSION**

The motion of defendant National Premium Show, Inc. for summary judgment is granted in part and denied in part as follows:

There is no genuine issue that under the plain language of the Agreement, the Agreement could be terminated without cause, upon written notice to the other party, within the first sixty days of each program year and that Hall-Erickson terminated the Agreement in December 2002. There is no genuine issue that paragraph 9 of the Agreement did not apply during the twelve months following termination. There is no evidence from which a jury could reasonably find that defendants entered into a "similar agreement" with PPAI (or any other entity) either prior to termination of the Agreement or during the twelve-month period after termination. The only issue that remains as to breach is whether defendants violated the Agreement during the time that it was in effect--prior to December 19, 2002--by failing to grant plaintiff the right of first refusal.

Defendants' motion to strike certain exhibits attached to plaintiff's supplemental memorandum of law in opposition to defendants' motions for summary judgment is denied.


DATE:     July 31, 2006



ENTER:    _____

          John F. Grady, United States District Judge